Statement of the Case.
MONROE, C. J.
Plaintiffs, 45 in number, .alleging that they are citizens and qualified voters of the parish of Washington, brought this suit, on March 20, 1920, to have it decreed that the name of the defendant should *291 not be printed as the Democratic nominee for the- office of sheriff upon the ballots to be used at the general election to be held on April 20, 1920.
The petition charges that a Democratic primary for state and parish officers was ordered and held in Washington parish on January 20, 1920, and that petitioners voted thereat; that the candidates for the office of sheriff were Jason E. Bateman (defendant herein); Thomas J. Simmons, and Layton L. Schilling, and that, neither of them having received a majority of the votes cast, a second election was ordered, and held on February 24, 1920, between Bateman and Simmons, as the .two who had received the greater number; that after they had prosecuted their campaign for about three weeks, Simmons withdrew, and thereupon the parish committee declared defendant the nominee; that neither at the time of the declaration nor within five days after the election, nor at any time later, did defendant file a sworn statement of his campaign expenses, as required by Act 213 of 1912, and that, though he had filed a statement of the expenditures and expenses of the campaign preceding the election, it was false-and not in accordance with the requirement of the statute, in that it did not contain a full, correct, and detailed statement of such expenditures and expenses; that, upon information and belief, plaintiffs charge that during said first campaign defendant delivered to different persons, who are named, various sums of money, which are stated, and other sums, the amounts of which were unknown to petitioner, to be used, and which were used, to the knowledge and with the approval of defendant, in influencing and buying and attempting to buy votes in bis favor for the nomination which it was the purpose of the election to determine. It is finally alleged that defendant and his representative, acting With "his knowledge and consent, and with funds furnished by him,“did bribe many other voters to vote for him, and did spend other sums of money to corruptly influence votes for him, in an amount largely exceeding the aggregate sum allowed for election expenses and expenditures by Act 213 of 1912, and that the matters so charged were discovered as the result of research based on the statement filed by defendant about January, 1920, and within 20 days after the discovery.
Defendant excepted to' the jurisdiction of the court, also to the allegations of the petition, on the grounds that they are vague and insufficient and that they disclose no cause of action; and, the exception of no cause of action having been maintained and the suit dismissed, plaintiffs (with the exception of two or three who Withdrew from the case) appealed from that judgment and lodged the appeal in this court on May 31, 1920.
Ojiinion.
It appears from the written reasons filed by the judge a quo that he sustained the contention upon which defendant based the exception of no cause of action, to wit:
“That Act 213 of 1912, on which plaintiffs rely, has no application, and the sole law governing primary elections is Act No. 35 of 1916; that this law repealed the provisions of Act 213 of 1912, at least in so far as it relates to primary elections; that the penalty sought to be enforced by petitioners, viz. the exclusion of defendant from the office to which he has been nominated, can only be imposed after defendant has been convicted in a criminal proceeding; that to force Mr. Bateman to appear and defend the present suit would be a violation of his constitutional rights, guaranteed to him by article 11 of the Constitution.”
Defendants counsel say in their original brief:
“Now, we frankly admit to the court that, if Act No. 213 of 1912 has not been superseded, then these exceptions must fall. But, if there is no such law, or if this law does not relate to *293 primary elections, then, necessarily, these exceptions must be maintained, and plaintiffs’ suit dismissed.”
The title and sections 1 and 44 of Act 213 of 1912 read in part:
“An act defining and prohibiting corrupt practices appertaining to elections; providing the (manner and from whom candidates may receive campaign funds, and how the same may be disbursed; requiring statements of the same to be filed before certificate of nomination will issue; and the penalties for failure to file such statement; declaring certain acts, promises and contributions of cam didates unlawful. * * *
“Section 1. * * * That whenever, under the provisions of this act, the reference is made to an election, it is meant to include any election, state, district, parochial, ward or municipal, held under any law of this state authorizing or requiring the same to be held, ordered for the purpose of nominating candidates or electing those nominated for any office for which an election may be held. * * *
“Sec. 44. * '* * That all acts or parts of acts inconsistent or in conflict with this act be and the same are hereby repealed, provided, the provisions of this act on the same subject matter as the primary election law are not to be construed as a repeal, but as supplementary and additional thereto. * * * ”
As the proceedings' provided for under the primary election law (Act 49 of 1906) and the penalties prescribed differed from those contained iu the act thus quoted, the repealing clause of the last act rendered it difficult, not to say impossible, at times, to construe the two statutes together, and, it was, no doubt, for that reason that Act 35 of 1916 was passed, with the evident and declared purpose of incorporating therein and withdrawing from the previous legislation the whole subject-matter of the. calling, holding, and regulation of the primary, as distinguished from all other, elections.
The title and repealing clause of that act read, in part, as follows:
“An act to provide for calling,, holding, conducting and regulating Primary Elections * * * ; to provide for defraying the expense of said election * * * ; to prescribe what are offenses against the provisions of this act, and to provide penalties for the violation of said provision, and to repeal all laws in conflict herewith. * * *
“Sec. 42. * * * That all laws and parts of laws contrary to, and in conflict herewith, be and the same are hereby repealed; that all laws and parts of laws on the same subject matter be, and the same are hereby repealed.”
[1,2] The act thus quoted, being independent legislation, not only repealed or superseded all previous legislation in conflict with its provisions, but obviously, to cover the whole subject-matter with which it deals, it superseded all prior legislation pertaining thereto. Barnard v. Gall, 43 La. Ann. 959, 10 South. 5; State v. White, 49 La. Ann, 129, 21 South. 141; State v. Smith, 118 La. 248, 42 South. 791; State v. Henderson, 120 La. 535, 45 South. 430; State v. Dudley, 123 La. 436, 49 South. 12; State v. School Board, 126 La. 395, 52 South. 553; Sutherland on Statutory Construction, §§ 153, 154; Sedgwick on Construction of Laws, p. 105; King v. Cornell, 106 U. S. 395, 1 Sup. Ct. 312, 27 L. Ed. 60; Tracy v. Tuffly, 134 U. S. 206, 10 Sup. Ct. 527, 33 L. Ed. 879.
The judgment appealed from is therefore Affirmed.
O’NIELL, J.,
is of the opinion that the appeal should be dismissed, as it was in the case of Hollander v. Bailey, Secretary of State, and Moran v. Bailey, Secretary of State, 148 La. 453, 87 South. 234, because the only object of this suit was to prevent the printing of the name of defendant, as the Democratic candidate for sheriff on the official ballot to be voted at the general election, and the appeal was not lodged in this court until the election had been held.